JACKSON, *ex dem.* CARMAN AND OTHERS, *against* ROSEVELT.

THIS was an action of ejectment for lots No. 2. 7. 12. 17. 22. 26, 27, and half of No. 21, in the subdivision of lot No. 20, in the great lot No. 2, in the *Hardenburgh* patent, situate in the town of *Liberty*, in the county of *Sullivan*, and in which the parties agreed on a case for the decision of the court.

On the 20th of *April*, 1708, letters patent were issued to the seven proprietors of the *Hardenburgh* patent, among whom was *Leonard Lewis*, from whom the lessors of the plaintiff ultimately derived their title. On the 6th of *September*, 1729, the patentees conveyed to *James Graham* one equal undivided eighth part of the tract; and, in 1730, *Leonard Lewis*, having previously by will, dated the 20th *February*, 1723, devised his interest in the patent to his wife, *Elizabeth*, during her widowhood, and,

*Where an heir, sued on the bond of his ancestor, pleads* non est factum, *and the issue is found against him, this is not such a false plea as will render him liable* de bonis propriis. *A sale under an execution, to a* bona fide *purchaser, cannot be defeated for error or irregularity in the judgment, or execution, or on the ground that no levy was made until after the return day. A sheriff's deed to a purchaser, under an execution, de-*

scribing the premises sold no otherwise than as " all the lands and tenements of the defendants, situate, lying, and being in the *Hardenburgh* patent," is void for uncertainty.

at the termination thereof, to his eleven children, as tenants in common, in fee, of whom *Joapsie*, the wife of *Laurence Van Kleeck*, was one. On the 31st of *January*, 1733, *Gerardus Lewis*, another of the children and devisees of *Leonard Lewis*, conveyed his interest in the patent to *Laurence Van Kleeck*. In 1749, a partition was made between the proprietors of the patent, by which great lots No. 2. 17. 20. 28, and 36, fell to the representatives of *Leonard Lewis*, between whom a subdivision of the part which they held in common was shortly thereafter made, and lot No. 20, in great lot No. 2, was allotted to *Joapsie*, the wife of *Laurence Van Kleeck*.

Joapsie *Van Kleeck* died, intestate, about the year 1758, seised of the lot No. 20, and leaving five children ; viz. *Baltus*, her eldest son, and heir at law, *Leonard*, *Sarah*, the wife of *Jacobus Van Kleeck*, *Elizabeth*, then married to *Jacobus Van Bummel*, since the widow of *Henry Ellis*, and *Tryntie*. Soon afterwards *Laurence Van Kleeck* died seised of the share in the patent, or some part thereof, purchased as aforesaid from *Gerardus Lewis*, having devised all his estate to his five children. On the 9th of *January*, 1767, *Baltus Van Kleeck* conveyed to each of the other children of *Joapsie Van Kleeck*, one fifth part of the share which their mother had possessed in the patent. *Baltus Van Kleeck* died in 1786, leaving the lessors of the plaintiff his heirs at law.

In *April* term, 1789, an action of debt was commenced against *Elizabeth Ellis* and *Jacobus Van Kleeck*, and *Sarah*, his wife, (the said *Elizabeth* and *Sarah* being the heirs and devisees of *Laurence Van Kleeck*,) at the suit of *Thomas Marston* and *John Marston*, executors of *Nathaniel Marston*, on a bond, executed by *Laurence Van Kleeck*, in the penalty of one thousand pounds, conditioned for the payment of five hundred pounds. The defendants pleaded *non est factum*, on which a verdict was found against them, and judgment entered the 5th of *March*, 1790. The judgment was in the ordinary form of a judgment against defendants sued in their own right, and has never been reversed, annulled, or set aside. Executions were issued, by which part of the amount of the judgment was levied, and, finally, a *test. fi. fa.* was issued to the sheriff of the county of *Ulster*, reciting the former executions, and describing the defendants as " heirs and devisees of *Laurence Van Kleeck*, deceased ;" but no further notice was taken of their representative character, and the levy

was not restricted to be made *de bonis testatoris*, but of the goods ALBANY,
and chattels of the defendants, and of the lands of which they
were seised on the day of the entry of judgment.

By virtue of this execution, the sheriff of *Ulster* levied upon
all the lands and tenements of *Elizabeth* and *Sarah*, the heirs and
devisees of the said *Laurence Van Kleeck*, and conveyed the same
to *John C. Wynkoop*, by deeds of lease and release, dated the
14th and 15th *February*, 1792. The deed of release recited, that
the sheriff had exposed to sale, " all the lands and tenements
of the said *Elizabeth* and *Sarah*, heirs and devisees of the said
*Laurence Van Kleeck*, situate, lying, and being in the patent
commonly called, or known, by the name of the *Hardenburgh*,
or *Great Patent*, in the county of *Ulster*;" and the premises
conveyed were described as follows : " All the said lands and
tenements of *Elizabeth* and *Sarah*, the heirs and devisees of the
said *Laurence Van Kleeck*, deceased, with the rights, members,
and appurtenances thereof, situate, lying, and being in the said
patent, in the county of *Ulster*, with the hereditaments and ap-
purtenances," &c.

On the 14th *March*, 1793, *Wynkoop* commenced proceedings
for a partition, under the act of *March*, 16th, 1785, of the land
thus purchased by him. In *April*, 1794, the commissioners
filed their partition in the clerk's office of *Ulster*-county, and
set apart lot No. 20, in the subdivision of great lot No. 2, to
defray the expense of the partition. This lot was, according-
ly, sold and conveyed by two of the commissioners, under
which sale, through sundry mesne conveyances, the defendant
derived his title to the part of the lot which he possessed.

*P. Ruggles*, for the plaintiff, contended, 1. That *John C.
Wynkoop*, on the 14th of *March*, 1793, when he commenced his
proceedings in partition, had no right or title in lot No. 20, in
great lot No. 2, and that the proceedings were, therefore, void ;
and that the lessors of the plaintiff, after the death of *Baltus Van
Kleeck*, in 1786, being seised of the one fifth of lot No. 20, in the
subdivision of great lot No. 2, as his heirs at law, must be enti-
tled to recover.

The proceedings of *Thomas Marston*, and others, against *Eli-
zabeth* and *Sarah*, the sisters of *Baltus*, were against them as
*heirs* and *devisees* of *Laurence Van Kleeck*, when, in fact, they
were purchasers under *Baltus*, and claimed no title to the pre-

ALBANY,
January, 1816.

JACKSON
v.
ROSEVELT.

mises by descent or otherwise. These proceedings being against them as heirs and devisees, their own proper estate could not be taken.* The act under which the partition was made, was that of the 16th *March*, 1785, (sess. 8. ch. 39. 1 *Greenleaf's* edit. *Stat.* 165.)

The plea of *non est factum*, of the ancestor, is not a false plea ; and if it were found false, it would not vary the judgment; but the lands only which *descended* would be liable to execution.† Here was a pretended levy and sale of lands to which the heirs of *Baltus Van Kleeck* had no right, and the proceedings under the partition could not give any right. If the deed can have any operation and effect, it must be on the property devised by *Lawrence Van Kleeck* to his five children.

Again, the deed from the sheriff is void, as being too general and indefinite to pass any estate to the grantee. It does not appear to be intended to convey the premises in question. In all sales by sheriffs, or other officers, under execution, the property must be ascertained by clear and definite description or bounds.‡

Again, the execution issued more than a year and a day after the judgment, without its being revived; and the sale was long after the return day of the execution; and it does not appear that any levy was made before the return day.§

*Griffin*, contra, contended, that *Wynkoop* had a title to support the proceedings in partition. If heirs and devisees plead falsely, and knowingly, judgment goes against them personally.‖ The judgment might be general, though the lands only affected by it would be liable to be sold.** The generality of the judgment, at most, was an error to be taken advantage of by the defendants. It did not render the judgment void. The defendants having acquiesced, and never brought a writ of error, the judgment is conclusive, and third persons, or strangers, cannot allege error.†† Though the judgment were erroneous, and should be, afterwards, set aside or reversed, yet the title of an intermediate *bona fide* purchaser, at a sheriff's sale, cannot be prejudiced.‡‡ So, an error in the *execution* will not vitiate the title of a *bona fide* purchaser at a sheriff's sale.§§ Nor can the generality of the description, in the sheriff's deed, be objected by a stranger; and it being an undivided right, it could not well be described more

* 1 *Greenleaf's* ed. *Stat.* 408, 409. sess 10. ch 56. s. 6, 7. See. also, 1 *Greenleaf's* ed. *Stat.* 236, 237. sess. 9. ch 27. 408, ch. 56. s. 6.

† 2 *Saund.* 7. n. 4. *Cro Car.* 436. 2 *Tidd's Pr.* 855.

‡ 1 *Johns. Cases,* 384. 2 *Johns. Rep.* 248. 11 *Johns. Rep.* 365. 379.

§ 4 *Johns. Rep.* 450.

‖ 3 *Bac. Abr.* 495. Heir, (H.)

** 6 *Johns. Rep.* 59., *Jackson* v. *Hoag.*

†† 2 *Bac. Abr. Error,* (B.)

‡‡ *Maning's* case, 8 *Co.* 191.

§§ *Jackson* v. *Bartlett,* 8 *Johns. Rep.* 361.

particularly, without setting out the whole bounds of the great *Hardenburgh* patent.

The act (sess. 8. ch. 39. s. 4. 1 *Greenleaf's* edit. *L. N. Y.* 165.) declares, that the commissioners' "deed to the purchaser shall pass as good a title, for the separate enjoyment of the same, as if all the patentees or proprietors of the land had made and executed the same, in due form of law." The 7th section provides, that any mistakes in drawing the lots, by those having no title, &c., shall not defeat the partition or title. Purchasers at a public sale, by the commissioner under this act, stand on the same ground with purchasers at a sheriff's sale, and ought to be equally protected.

YATES, J., delivered the opinion of the court.

The first question in this cause is, as to the validity of the general judgment entered in the suit instituted by the executors of *Nathaniel Marston*, against *Elizabeth Ellis* and *Jacobus Van Kleeck*, and *Sarah*, his wife, as heirs and devisees of *Laurence Van Kleeck*, under which the defendant claims his title, derived from the purchaser at a sheriff's sale, in virtue of an execution issued on that judgment.

The rule recognised in the books is, that, when the heir pleads a false plea, the plaintiff is entitled to a general judgment, but that *non est factum* of the ancestor is not deemed such a plea, if even it be found, on the trial, that the ancestor had executed the deed. In 2 *Saund.* 7. n. 4., it is expressly laid down, that the plea of *non est factum* of the ancestor is an exception to the above rule; that, if it be found false, it does not alter the judgment, but the lands descended only are liable to execution. The case of *Clothworthy* v. *Clothworthy* (*Cro. Car.* 437.) supports the same principle.

It is manifest, then, that the judgment on which the premises were sold to *John C. Wynkoop*, by the sheriff of *Ulster* county, is erroneous, and might have been corrected, on proper application for the purpose. It certainly cannot be deemed void altogether, particularly as against a purchaser at a sheriff's sale, because it is the judgment of a court of general jurisdiction, and the time of entering it was known to the defendant. It might, at their instance, have been modified, or set aside, previous to the sale; but that not having been done, it remained in force, and was in operation at the time of sale; and the title to lands under it, in the hands of an innocent and *bona fide* purchaser,

ought to be protected by it, unless such sale is rendered questionable on other and different grounds.

The objections, that it took place long after the return day of the execution, and that it did not appear that a levy had been made before the return day, and that the execution had not been issued until more than a year and a day after judgment, cannot affect the sale. In *Jackson, ex dem. M'Crea,* v. *Bartlett,* (8 *Johns. Rep.* 361.,) this court decided, that, in an action of ejectment against a purchaser under a sheriff's sale, the regularity of the execution could not be questioned, and that, if an execution issues after a year and a day, without a revival of the judgment by *sci. fa.,* it is only voidable at the instance of the party against whom it issued. In this case, I can see no reason why the same doctrine should not apply to the irregularity of the judgment, as well as the execution. A contrary principle would be attended with manifest injustice to purchasers. The defendant in the suit knew, or ought to have known, the consequences which would inevitably follow their allowing the judgment to remain. Having appeared and pleaded, in the suit against them, as heirs and devisees, and a part of the debt having been collected from them by the sheriff of *Dutchess* county, in virtue of an execution on the same judgment, before the sale made by the sheriff of *Ulster,* it cannot be presumed that they were not fully apprized of the operation of the judgment on all the real property owned by them. Their negligence and acquiescence, therefore, in not causing it to be set aside in season, would be conclusive against them, provided the deed executed by the sheriff of *Ulster,* to *John C. Wynkoop,* on the sale under the judgment and execution before stated, is sufficient, in law, to convey the premises in question.

The deed contains the following description : " All the lands and tenements of *Elizabeth Ellis* and *Sarah Van Kleeck,* heirs and devisees of *Laurence Van Kleeck,* situate, lying, and being in the patent commonly called and known by the name of the *Hardenburgh* patent."

This description is too general; it does not define the lots, or parts of the lots, of land owned by the defendant named in the judgment; nor is the allotment in which they are situated mentioned, although, by the case, it appears that the patent had been divided among the proprietors, and that such partition was notorious, for it is stated to have been recorded in the office

ALBANY,
January, 1816.

JACKSON
v.
ROSEVELT.

of the secretary of state, and that it had been confirmed by an act of the legislature. To say, therefore, that a sheriff's deed for all the lands and tenements of *Elizabeth Ellis* and *Sarah Van Kleeck*, in this patent, containing a tract of land evidently one of the most extensive in the state, and comprehending a district of country lying in several counties, is sufficient, would be giving an unprecedented latitude to the officer making a coercive sale, and by mere operation of law, and might be attended with consequences destructive to the rights of the debtor. No estimate of the value of the lands offered for sale could be made from this general and indefinite description; and, without some definite information, as to its situation, there must generally be a sacrifice of property, either by the debtor or purchaser. In most instances, if not invariably, the former would experience the loss. The officer ought to prevent such a consequence. The least that can be required of him, in making the sale, is so to locate the lands, as to afford means to the by-standers and bidders, of informing themselves as to the value. That was not done in the present case. The deed given by the sheriff of *Ulster*, must be deemed wholly inoperative, for the want of a sufficient description of the premises alleged to have been sold by it. If so, *John C. Wynkoop*, to whom the deed was given, had no right to institute proceedings in partition under it. The commissioners, consequently, appointed by the court, under those unauthorized proceedings, could not give a title to the purchasers, which is the source of the defendant's claim.

The 4th section of the statute for partition of lands, passed 16th of *March*, 1785, declaring that the deed of the commissioners, or any two of them, to the purchaser of lands set apart, and sold to defray the expenses of partition, shall pass to him as good a title for the separate enjoyment of the lands so purchased as if all the patentees or proprietors of the said land had made and executed the same, in due form of law, cannot avail in this case. It is true, the premises in question are held under a purchase, at a public sale, intended, unquestionably, to have been made by the commissioners, according to, and under the act above mentioned; but, as before shown, no authority existed by which *John C. Wynkoop* could institute those proceedings, and, of course, the confirmatory clause in the act does not apply to the deed given by them. There is nothing;

therefore, to preclude the lessors of the plaintiff, as the representatives of *Baltus Van Kleeck,* from setting up their claim to the premises in question.

*Laurence Van Kleeck* held his lands in the *Hardenburgh* patent, by deed from *Gerardus Lewis,* one of the children of *Leonard Lewis,* being one eleventh of one eighth of all the lands in the patent; and it appears, by the first partition, that great lots Nos. 2. 17. 20. 26, and 28, fell to the share of the legal representatives of *Leonard Lewis.* What lots or parts of lots, in the subsequent subdivision between those representatives, were drawn to the share of *Laurence Van Kleeck,* is not stated in the case; nor was it necessary for the purposes of this decision; that, however, must appear from the map of this subdivision, stated to have been filed in the office of the secretary of state. He devised his estate in the patent to his four children, so that each child held an equal interest in the lands which had been allotted to him, and of which he died seised.

*Joapsie,* or *Jacobsie,* the wife of *Laurence Van Kleeck,* also held one eleventh of one eighth of all the lands in the patent, in virtue of the will of her father, *Leonard Lewis;* and in the subdivision before mentioned, lot No. 20, in the subdivision of great lot No. 2, fell to her share. She died intestate, seised of that lot, leaving *Baltus Van Kleeck* her heir at law. He conveyed to each of the remaining four children, one undivided fifth part of their mother's right in the patent, retaining one fifth, to which his children, who are the lessors of the plaintiff, are entitled. The premises in question are comprehended within the above lot No. 20. Judgment must, consequently, be entered for the plaintiff, for one undivided fifth part of those premises.

Judgment for the plaintiff.