## JUNE TERM, 1843.

### JABEZ JENKINS, JR. v. WILLIAM S. BODLEY, et al.

Want of notice protects a purchaser against a latent equity only, not against the legal title; in the latter case, the maxim *caveat emptor* applies.

Wherever the description given in a deed is imperfect, yet sufficient to point inquiry to the true locality and boundary of the land, then the deed is not void for uncertainty, but the defect may be cured by the aid of parol evidence, in giving identity to the premises intended to be conveyed.

A vendee, who would protect himself against a prior equity, upon the ground of being a bona fide purchaser without notice, must deny notice fully, positively, and precisely, even though it be not charged on the other side.

Actual possession of land is constructive notice of the nature and extent of the interests and rights of the occupant.

A court of equity will limit the lien of a judgment to the interest which the judgment debtor actually had in the property at the time of rendering the judgment; so far, at least, as to protect the prior equities of third persons.

ON the 1st day of April, 1843, Jabez Jenkins, Jr. filed his bill, alleging that, on the 1st day of November, 1837, Roderick M'Leod purchased of Joshua C. Jenkins a lot of ground, with the improvements thereon, lying in the city of Vicksburg, *at the sum of* five thousand dollars; and on the same day Jenkins executed to him a deed in fee simple thereto; that in the deed the lot is described as follows, to wit : " Commencing — feet east of the northwest corner of lot No. 201, in square No. 30, on the original plat of the city of Vicksburg; 'thence east along China-street, 40 feet; thence south $147\frac{1}{2}$ feet ; thence west 40 feet ; thence north $147\frac{1}{2}$ feet, to the place of beginning"— and refers to the deed; that on the same day M'Leod conveyed to Samuel W. Brown and Thomas A. Marshall, in trust, the same lot, to secure the payment of the purchase-money to Joshua C. Jenkins, and refers to the deed of trust, in which the lot is described as follows, to wit : " Commencing 30 feet east of the northwest corner of lot No. 201," &c., continuing the description in the same words used in the deed. The bill further alleges that, on the day of the purchase, M'Leod was placed in possession of the lot, as described in the deed of trust ; that he lived upon, improved, and paid the taxes on it from that

time till about the 26th day of November, 1839, when it was sold by Brown and Marshall, agreeably to the provisions of the deed of trust, and purchased by Jabez Jenkins, Jr., who occupied it by his agents and tenants, till about the 1st day of June, 1841 ; when his tenant, without the knowledge or consent of his agent or himself, attorned to William S. Bodley, and has paid him the rent ever since ; that Bodley claims and holds the property under a purchase from the sheriff of Warren county, who sold the same as the property of Joshua C. Jenkins, under executions against him, which issued on judgments obtained long since the 1st day of November, 1837. The bill further charges that Joshua C. Jenkins has had no interest in, nor pretended to set up any claim to, nor exercised any ownership over said property since he sold it to M'Leod ; that it was notoriously occupied by M'Leod and Jabez Jenkins, Jr., as above stated ; all of which was well known by Bodley, at the time of his purchase. The bill charges that the place of beginning in the description of the property, contained in the deed from Joshua C. Jenkins to M'Leod, was omitted by mistake ; that Jenkins intended to convey, and both he and M'Leod supposed, until after Bodley purchased at sheriff's sale, he actually conveyed the lot described in the deed of trust, the possession of which was delivered to M'Leod ; and prays that Joshua C. Jenkins and William S. Bodley be made defendants ; that Jenkins be compelled to correct the mistake in the deed to M'Leod ; and that Bodley be required to surrender up his deed and title-papers to be cancelled, &c., and for general relief.

The answer of Joshua C. Jenkins admits, substantially, all the allegations of the bill.

The answer of Bodley admits the executions of the several deeds and deed of trust mentioned in the bill, and the possession and occupancy of M'Leod ; the payment of the purchase-money, and improvements of the lot, &c. by him, but denies any knowledge of Jabez Jenkins, Jr.'s interest, until after he purchased at the sheriff's sale. The answer avers that one of the judgments, under which Bodley purchased at the sheriff's sale, was founded on a note given by Joshua C. Jenkins to William M. Pinckard, for part of the purchase-money of lot No. 201 ; but admits that Pinckard took per-

sonal security on the note without mortgage, or retaining by contract any lien on the lot.

*T. A. Marshall,* for complainant.

The pleadings present so clear and strong a case of equity in favor of the complainant, that an elaborate argument is deemed wholly unnecessary. I will first suggest two questions for the consideration of the Court, without attempting to support them by either argument or authority, and then take a brief view of a third, on which the complainant confidently relies for success.

1. Must not the deed from Joshua C. Jenkins to M'Leod, and the deed of trust given by the latter to secure purchase-money to the former — both being executed at the same time, by the same parties — be regarded in law as *one* transaction ? And if so, does not the correct description of the property, intended to be conveyed, contained in the deed of trust, sufficiently supply the omission made in the deed ?

2. The number of the lot, and square, and quantity of ground, being correctly given in the deed to M'Leod, did he not thereby, at least, become a *tenant* in *common* with Jenkins in that lot, the latter then being the owner of the whole lot ; and could he not immediately have filed a bill and compelled a partition ? And if so, was not the putting him in possession of a particular part of the lot, and Jenkins's acceptance of a deed of trust on that part to secure the purchase-money, a legal partition made by the parties themselves ?

3. Admitting that the omission in the deed to M'Leod, although clearly a *mistake,* renders it absolutely *void ;* or admitting there had not been even " a memorandum in writing" of the contract between J. C. Jenkins and M'Leod ; it is confidently believed there could be no doubt, even then, that the complainant's equity should prevail. In that case, M'Leod, having been let into the possession, notoriously lived upon and improved the premises, and paid the whole of the purchase-money, could unquestionably have enforced a specific performance, as against Jenkins. See *Wetmore* v. *White,* 2 Caine's Cases, 87 ; *Hutchinson* v. *Hutchinson,* 4 Desaus. 77. Is, then, a creditor of Jenkins, or a subsequent

purchaser *with notice*, placed in any better condition than Jenkins himself occupied ? What title did Bodley acquire by his purchase at the sheriff's sale ? The sheriff sold and conveyed only such right, title, and interest as Joshua C. Jenkins had at the time the judgments, under which the sale was made, were rendered. What was the right, title, and interest, he then owned ? In the present view of the case, I answer, the *legal* title, subject to the complainant's or M'Leod's equity ; and that was the *only* interest Bodley acquired, he being a purchaser with notice ; that is, he bought the interest *Jenkins* had at *that time*, and *no more*. But was Bodley a purchaser with notice ? He certainly was in *law*, whether he knew in *fact* of the purchase and possession of M'Leod and the complainant, or not. They had notoriously resided on, and claimed the property as their own, for nearly four years ; and it is a settled rule in equity, that the *possession* of a tenant is notice to a purchaser of *every* interest of the tenant, and of the *whole extent* of that interest, and the purchaser is bound to admit *every* claim that could have been enforced against his vendor. See 5 John. Ch. R. 29, *Chesterman* v. *Gardner ;* and 7 Dana, 233, *Yancy* v. *Holliday*. Indeed, it has been repeatedly decided in Kentucky, that " *actual occupancy* is notice to *all the world* of *every* interest of the occupant." The cases on this point are numerous, and are no doubt too familiar to this Court to require a special reference. In *Morton* v. *Robards, et al.*, 4 Dana, 258, after an elaborate argument, and a full and critical review of all the authorities, the Court held that notorious possession was notice to purchasers under *execution*, as well as at *private sales;* and that *creditors* and *purchasers* were *alike bound by it*. Such is also believed to be now the *settled rule of this Court*, which must necessarily be conclusive of this case.

I will notice, however, one other point, which, from the tenor of defendant Bodley's answer, will probably be raised by him. As one of the judgments, under which Bodley purchased, is believed to have been founded on a note, given by J. C. Jenkins to Wm. M. Pinckard, for part of the purchase-money of lot No. 201, of which the land in controversy is a portion, it may be supposed that Pinckard, therefore, retained a *lien* on the whole lot for the whole purchase-money ; and that his lien will enure to the benefit of Bod-

ley. But such a supposition is manifestly erroneous. It will not be denied that a vendor, under some circumstances, has an equitable lien on the estate sold for the payment of the purchase-money ; yet such lien is binding only while the estate remains in the hands of the purchaser. 1 John. Ch. R. 308 ; Hardin, 48 ; 6 Monroe, 199. It will never be enforced against a *bonâ fide* purchaser without notice. See 4 Kent's Com. 154. But whenever the vendor takes other security, proving thereby that he does not intend to rely on the estate sold, his equitable lien is discharged. 4 Kent, 153. Pinckard took personal security on the notes, and did not require a deed of trust or mortgage. He retained, therefore, no lien for the purchase-money, either in law or fact.

CHANCELLOR. Is Bodley a *bonâ fide* purchaser without notice in the legal sense of that phrase ? I think not. 1st. Because the deed conveyed a legal title, and want of notice protects a purchaser against a latent equity only, not against the legal title ; in the latter case, the maxim *caveat emptor* applies. 2. Because the deed was sufficiently descriptive of the lot in question, to leave no doubt about the identity of the property, intended to be conveyed. The description of the lot, as given in the deed, shows that the lot is situated in the city of Vicksburg, in lot No. 201, square No. 30, and begins at some point east of the northwest corner of said lot, and runs from that undefined point, eastwardly, along China-street, forty feet. Now, as the deed was duly registered, it was constructive notice to all the world, of these facts, and if they are sufficient to point out the locality of the lot, and to supply by inquiry, information as to the exact boundary of the lot, then the description must be held sufficient in equity, to protect the grantee in the deed against any subsequent purchaser ; because the facts thus shown were at least sufficient to put a prudent purchaser upon his inquiry, and it is well settled, that whatever is sufficient for that purpose, amounts in equity to notice. When the deed from Jenkins to M'Leod is taken in connection with the reconveyance by him of the same lot, in trust for the payment of the purchase-money, in which latter conveyance there is a full and accurate description of the boundaries of the lot, I think they

must be regarded as conveying full and explicit notice, as to the identity and locality of that lot.   Bodley distinctly admits, in his answer, the execution and delivery of these several deeds, but does not answer whether he had notice of them, or not, at the time of his purchase.   A vendee who would protect himself against a prior equity, upon the ground of being a *bonâ fide* purchaser without notice, must deny notice, fully, positively, and precisely, and this, though it be not charged on the other side, and he must also deny notice of all the facts charged as constituting such notice.   *Gallatian* v. *Cunningham*, 8 Cowen, 361.   But there is another feature in this case, upon which I think the defendant is chargeable with constructive notice.   It is charged in the bill, that M'Leod had open and notorious possession of the lot in question, under, and by virtue of his deed, from Jenkins, up to the time of the sale, under the deed of trust; and that the complainant and his tenants had such possession at the time of Bodley's purchase, under the judgment, against J. C. Jenkins.

Bodley admits in his answer that such was true, but denies that he knew it until after he became the purchaser of the lot. That denial of knowledge cannot impair the effect of the fact of possession.   It seems now to be very generally admitted, that where a person is in open and actual possession of land, even though he claim by an equitable title, that possession is sufficient to put a subsequent purchaser upon inquiry, as to the actual rights and the nature of the claim of such occupant; and is constructive notice of the nature and extent of those rights.   *Allen* v. *Anthony*, 1 Meriv. Rep. 282 ; *Chesterman* v. *Gardner*, 5 John. Ch. R. 32 ; *Governeur* v. *Lynch*, 2 Paige, Ch R. 300 ; 6 Wend. 213, 226 ; 2 Mass. Rep. 508 ; 3 Pick. Rep. 149 ; *Bayley & Co.* v. *Walker*, decided in this Court. Freeman, Ch. Rep. 85.

I think the complainant is entitled, upon general principles, to the relief which he asks ; by virtue of his purchase under the deed of trust, he stands clothed with the same rights and remedies, which M'Leod would have had, whose right to relief against Bodley's purchase, seems to me, would have stood undoubted. The judgment against Jenkins, under which that purchase was

made, being long subsequent in date to the conveyance from Jenkins to M'Leod, it is clear, that in equity, at least, Jenkins had no interest in the lot upon which the judgment could attach, and I take it to be clear, that a court of equity will limit the lien of a judgment, to the interest which the judgment debtor actually had in the property, at the time of rendering the judgment, so far, at least, as to protect the prior equities of third persons. 1 Paige, Ch. Rep. 125 ; 2 Har. & John. 64 ; Atk. on Con. 512 ; The Case in 6 Paige, Ch. Rep. 347.

The authorities are full, to show that the deed to M'Leod is not void for uncertainty. The rule is, that wherever the description given in the deed is imperfect, yet is sufficient to point inquiry to the true locality and boundary of the land, then the deed is not void for uncertainty, but the defect may be cured by the aid of parol evidence, in giving identity and locality to the premises intended to be conveyed. 4 Cruise's Dig. p. 221, sec. 29, 33 ; 4 Mass. Rep. 205 ; 13 John. Rep. 102 ; 8 Peters, Rep. 84.

Let a decree be prepared for the complainant, according to the prayer of the bill.