By the Court.
Mason, J.
The first question to: be considered is as to the nature of the objections which a purchaser at a judicial sale can properly interpose to the proceedings by virtue of which the sale is made.
He may, undoubtedly, object that the court making the decree had no jurisdiction of the subject-matter; for in such case the decree is an absolute nullity, and the purchaser acquires no title.
He may object also, that the court had not acquired jurisdiction over all the persons having an interest in or lien upon the property sold, either by reason of their not having been made parties to the suit, or because there is no proof that they appeared, or were properly served with process; for in either of these events their rights are not affected, and the purchaser does not obtain an unincumbered title. Or, lastly, he may object that some statutory provision has been violated or neglected, which rendered the proceeding invalid.
*471 But the purchaser can never be allowed to object that the decree is erroneous, or that the court have come to a wrong conclusion upon any point affecting the merits of the controversy. That would involve the re-examination of the questions already decided, and would in effect give to the purchaser the right to a rehearing of the cause, and if he could thus raise the question before the same tribunal which made the decree, he would of course have the right of bringing it by appeal before a higher tribunal. If the immediate purchaser under the decree should be allowed to do this, every subsequent purchaser of the premises, however remote, deriving title through the decree, must enjoy the same privilege. It is' very apparent that such a doctrine would destroy the value of all sales under the decree of the court. It would also violate an elementary principle, that no person can appeal from a decree who was not a party, or who does not legally represent a party, in the court below. (Steele v. White, 2 Paige, 478.)
Neither is it competent for a purchaser to object to the mere form of the proceedings, which are more or less governed by the discretion of the court, or to irregularities in matters of practice. It is now definitively settled, that questions of practice are not the subjects of appeal, because they are addressed to the discretion of the court; (Fort v. Bard, 1 Comst. 43 ; Schermerhorn v. The Mohawk Bank, Ibid. 125;) and if the parties to the suit cannot appeal from a decree on such matters, a fortiori, a stranger cannot be allowed to make them the ground of refusing to complete his purchase. “ It seems,” says Sugden, “ that it may be laid down as a general rule that a purchaser shall not lose the benefit of his purchase by any irregularity of the proceedings in a cause. He is bound to see that the sale is according to the decree, and if it should appear to have been contrary to the decree, it would not be good.” (1 Sugd. Yend. & Purch. 102.) But if it be according to the decree, he is protected in his purchase, however erroneous the decree may be, or however irregular the proceedings, provided the court had jurisdiction over the subject-matter, and over all the parties having a lien on or interest in the premises. (Jackson v. Roosevelt, 13 John. 97.)
*472 With these familiar principles in view, let us examine the objections taken by the purchaser in the present ease.
The first objection, and the one on which the counsel for the purchaser appeared on the argument chiefly to rely, was this, that the court had no power, under the pleadings in the cause, to decree a sale of the mortgaged premises, but that the defendant, Hatfield, if he wished to enforce his mortgage, should have filed a cross bill for that purpose. The objection does not deny the jurisdiction of the court over the subject-matter in controversy, and over the parties; on the contrary, it admits that the court had jurisdiction of both, for it implies that if a cross bill had been filed, which would have been necessarily between the same parties, and in the same court, a decree of sale made upon the original and cross bill would have given a good title to the purchaser.
Here then is a controversy as to the validity of a mortgage, purporting to have been given by executors by virtue of a power contained in the will of their testator. The heirs of the testator file a bill, and pray to have it declared null and void, on the ground of want of power in the executors to give it. The mortgagee insists in his answer that the executors had full power under the will, and prays that the amount due upon the mortgage may be paid him, or in default thereof, that the mortgaged premises may be sold. In the course of the proceedings, the due execution of the mortgage, and the payment and proper application of the money it purported to secure, are fully proved, and the only question left for the court to pass upon is as to the power of the executors. If they had no such power, it was utterly void, and the court by its decree would so declare. If they had the power, it was a valid lien on the property, and the mortgagee would, as a matter of course, be entitled to enforce it. The court decide in favor of the validity of the mortgage, and authorize the mortgagee, in case the amount is not paid him, to resort to a sale of the premises on which he has the lien.
Under this order of sale, the petitioner before us is the purchaser, and he now comes before the court, and objects that *473 they have made an erroneous decision, and that, according to the uniform course of proceeding in chancery, a decree of sale could not have been granted in this suit except upon a cross bill.
Admitting, for the sake of the argument, that the court erred and mistook the practice or the settled rules of proceeding in such cases, it appears to us that, by the well established principles which we have above briefly stated, the purchaser is not at liberty to make this objection. ' Whether the error which he alleges be one of practice merely, or one of pleading, which might be the subject of an appeal, in either light, it belongs to that class of objections of which the parties to the suit alone can take advantage.
But inasmuch as the objection was fully discussed on the argument of the petition, and- no written opinion was delivered on the rendition of the decree, we think this a proper occasion for stating our views on the principal question.
We are aware that it is laid down jn the elementary treatises on pleadings, that a defendant cannot pray in his answer for any other relief than to be dismissed from the suit with costs, and that if he has any relief to pray, or discovery to seek against the plaintiff, he cannot do it by cross bill, (Lube, Eq. PI. 34,) and we were referred on the argument to some cases decided in the western and' south-western states, in which it was held expressly that a defendant was not entitled to relief though he had prayed for it in his answer, and also prayed that his answer might, in that respect, be considered as a cross bill for relief. And in one case, the relief thus prayed for was denied, although the other parties to the suit had elected and consented to consider the answer as a cross bill. (See particularly Harris v. Carter’s Admin., 3 Stewart Al. R. 133 ; McConnell v. Hodson, 3 Gilman, 640.) But the rule has not been maintained in such strictness, either in England or in this state. Admitting it to be correct and proper in the great majority of cases, it is nevertheless a rule adopted by the courts for convenience, and the furtherance of the rights of parties, and which can therefore be modified or altered whenever its application would *474 work injustice, or put the parties to unnecessary expense. And it accordingly has been departed from in cases which seemed to the court to warrant a departure.
Thus, in Fife v. Clayton, (13 Ves. 546,) the bill was filed by the purchaser of an estate at auction, for a specific performance of the agreement of sale. • He insisted that he was entitled to a right of common, with the estate. The defendant proved that at the sale the right of common had been expressly excepted, and the plaintiff thereupon moved to dismiss the bill. The defendant, however, insisted that he was entitled to a decree against the plaintiff for the performance of the agreement as proved on his part, without a cross bill, and referred to a case before Sir William Grant, in which he had dismissed with costs a cross bill filed under similar circumstances, considering it unnecessary, as the court would upon the answer have decreed a specific performance of the real agreement, if set up in the answer. The Lord Chancellor said that the old course required a bill and cross bill, but, he added, I am willing to follow a precedent that will save expense, and is right upon principle; and he decreed a specific performance of the contract proved by the defendant. The plaintiff in that case having contended for a different construction, would not have been entitled to a decree for the agreement established by the defendant, for it was not the case made by his bill. (Clowes v. Higginson, 1 Ves. & B. 524.) A similar decision to that in Fife v. Clayton was also made in Gwin v. Lethbridye, 14 Ves. 585.
The case of Codwise v. Gelston (10 John. 517) appears to have been decided by the court of errors on the same principle. It was a bill filed by the assignees of Comfort Sands, a bankrupt, for the purpose, among other things, of setting aside a judgment obtained by Gelston against the bankrupt prior to his discharge, on the ground that he had taken the body of the bankrupt in execution, and had afterwards voluntarily released him. The defendant denied the allegations of the bill in that respect, and prayed to be dismissed with costs. He afterwards, however, presented a petition to the court praying that his judgment might be paid out of the proceeds of real estate of the bankrupt *475 sold by order of the chancellor, and brought into court. The chancellor dismissed the bill as against Grelston with costs, and also denied his petition with costs. On appeal by Grelston from the order denying the petition, it was unanimously reversed. Kent, Oh. J., said “it may be difficult to draw a precise line between cases in which a party may be relieved upon petition, and in which he must apply more formally by bill. Petitions are generally for things which are matters of cov/rse, or upon some collateral matter which has reference to a suit in court. The case before us was of the latter kind, as O. asked only to be paid the amount of moneys brought into court, and upon which he had a lien. Grelston was not a novus hospes. He- had been before the court in this very cause, and his case, was .well known, and the court had already declared that he was entitled to priority of satisfaction in preference to the general creditors.” “ The mode of application depends very much upon the discretion of the court, and in this case I think it was well enough, and suited to the object.”
The case before us resembles that of Codwise v. Gelston, in several important particulars. The bill there was to set aside a judgment, here it is to set aside a mortgage. In each case the security was held to be valid, and the right of the creditor to payment, out of the property or its proceeds, established. In each also, the question was raised whether the defendant could have the relief he asked for in that suit, or whether it was necessary to file a cross bill. In the case of Grelston, however, the prayer for payment was by petition, after he had put in an answer praying to be dismissed. In the present case, the defendant, in the answer itself, prayed that he might have a-decree for payment, and a sale of the property to enforce it. We aré unable to see any difference in principle between the two cases, or why a cross bill should be necessary in the one rather than in the other.
In Clark v. Hall, (7 Paige, 3382,) we have another application of the same principle. The bill in that case was for specific performance by a vendee against his vendor, of a contract for the sale of land. A decree was made in favor of the plaintiff. *476 The defendant then appealed, but afterwards dismissed the appeal, and applied to the vice-chancellor for an order that the complainant pay the purchase money, or that his bill be dismissed, which application was granted, and, as the report states, exclusively on the authority of Codwise v. Gelston. When the cause came up, on appeal to the chancellor from this last order, he held that the decree should not have directed the bill to be dismissed on default of payment by the complainant, and that the defendant was entitled to a sale of the premises and a personal decree against the complainant for any deficiency in the proceeds of the sale to raise the purchase money. The chancellor said that the decree was in substance a decree for the specific performance of the agreement by both parties, and that the defendant was entitled, as a matter of course, to an order compelling the plaintiff, on his part, to perform the agreement, for the specific performance of which he had obtained a decree against the defendant.
Now, although there is a difference between a bill seeking to •enforce an agreement, and a bill to set one aside or cancel it, the plaintiff in the one offering to perform his part, and in the other denying his obligation to do so, yet the principle on which the defendant is entitled to relief is the same in both cases, to wit, that the agreement is established by the decree of the court as valid and binding on both parties. The matter is res adjudicata; the parties are before the court; they have submitted the question as to their mutual rights under it to its decision, and it would be an idle ceremony to compel the defendant to resort to a new suit, in order to obtain that relief to which the court had adjudged him entitled. The principle of the decision in Clark v. Hall, and in the other cases we have cited, is manifestly at variance with the rule that a defendant cannot obtain substantive relief, in regard to the subject matter of the controversy, wifhoút filing a cross bill. But we think that all establish the position that the rule is one of convenience merely, and that whether a party shall be put to a cross bill or not, rests in the discretion of the court, and that its discretion will be so ex *477 ercised as to dispense with a cross bill, whenever justice can be done to the parties without it.
The case of Carnochan v. Christie, (11 Wheat. 446,) was cited as establishing the 'position, that where a bill is filed to set aside an agreement or conveyance, the conveyance cannot be established without a cross bill filed by,the defendant. Such is the marginal note, which has been copied into various digests and elementary treatises, as a decision of the supreme court of the United States on this point. On examining the report, however, it will be found that the court made no such decision. The case arose upon an award of arbitrators. A bill had been filed to open and restate an account, and to cancel deeds which had been executed to the defendants as a security,for the balance alleged to be due. The whole matter was submitted to arbitrators, who made an award. One of the exceptions taken to the award was, that the arbitrators had exceeded their power in requiring the plaintiff to give to the defendant a clear unincumbered title to the lands pledged, which, it is to be inferred, the counsel for tbe plaintiff contended they had no right to do under the pleadings in the cause. Chief Justice Marshall, who delivered the opinion of the court, does not discuss this question at all, but gives two answers to the objection, first, that the arbitrators had not required the plaintiffs to give a title, and second, if they had done so, it was by no means clear that the arbitrators would have exceeded their powers under the submission ; and the question, what would have been the rule if the cause had come before the court to be determined on the pleadings and proofs, did not properly arise, and was not passed upon by the court.
The modern doctrine of recoupment is nothing more than an application of the same principle in actions at law. It is now, perfectly settled, that in an action for the breach of a contract, if the plaintiff has violated some'stipulation in the same contract, the defendant may, instead of suing in his turn, re-, coup or cut off the damages to which the plaintiff might be entitled, by the amount of damages which the defendant has sustained. And this has been allowed, not in consequence of *478 any statutory enactment, but in the exercise by tbe courts of a sound discretion for the advancement of justice and the diminution of expense. • =
"We did not think, that sitting as a court of equity, we were called upon to be less liberal than courts of law, or that we ought to be tied down by technical rules, from which courts of equity in England and in our own state had cut themselves loose. Had we refused to grant the defendant the relief which he asked, and' compelled him to file a cross bill, we should have insisted upon a technicality merely for its own sake. We had not only decided that the executor had power to give the mortgage, but its due execution and the payment of the money mentioned in its condition had been duly proved. It followed, as a matter of course, that the appellant was entitled to payment. Why then require him to file a cross bill ? We should have been deficient in that regard to the interest of these infants, which the court ought to manifest, if we had needlessly burthened their scanty inheritance with the costs of another suit. Such were the considerations-which induced us to make the decree of sale in favor of the defendants in this cause. But whether the decree was right or wrong, we think it manifest from what has been said, that the purchaser has no right to call it in question.
It was further objected tnat the plaintiffs were infants, and that the court cannot transfer the title of infants by decree, except where the statute gives it authority. It was not contended, however, that the court has no power to decree the sale of mortgaged property because the equity of redemption belongs to infants, and the objection resolves itself into the question we have just been considering of the form of proceeding.
It is well settled that an infant plaintiff is as much bound and as little privileged as a person of full age. This was so held in Lord Brooke v. Lord Hertford, (2 P. Will. 518,) and in Gregory v. Molesworth, (3 Atk. 626,) and has been held to be good law ever since. (Leons v. Hyle, 1 Paige, 486; Morrison v. Morrison, 4 Myl. & Cr. 225.) If the court then would have had power under the pleadings in this cause to order a sale, had the *479 plaintiffs been adults, they have the same power though they are infants.
It was also objected that no notice of lis pendens was filed as required by the statute. The object of the notice is to apprise persons, not parties to the suit, of its pendency, and for that purpose the court originally by rule required it to be filed; 'but whether filed or not, the decree bound all the parties to the suit.
The act to reduce the expense of foreclosing mortgages in the court of chancery, passed May 14th, 1840, required this notice to be filed as a substitute for making creditors by judgment and decree parties to the suit, and absolutely prohibited the court from making a decree in a foreclosure suit, unless such notice was filed; and although that part of the law which dispensed with the necessity of making such creditors parties, was by the act of 1844 repealed,' yet the prohibition against making a decree in such case, without proof of the service of the notice, was continued. It declares that no decree of foreclosure shall be made, unless the filing of the notice shall be proved as required by the act.
The language is general, but it must be construed according to the subject matter. The object of the law was, as appears from its title, to reduce the expense of foreclosing mortgages. The act relates to bills filed for that purpose, and to them only. The 8th section, which requires the notice to be filed, and prescribes its contents, is applicable in terms to bills of foreclosure. It commences thus: “ Whenever a bill for the foreclosure of a mortgage shall be filed, it shall be the duty of the complainant, or his solicitor, to file a notice,” &c., &c.
The bill in this case was not filed to foreclose a mortgage, but to set one aside. The notice could not have been filed pursuant to the law. Besides, the prohibition is in derogation of the general powers of the court, and is not to be extended by construction. If it has the force which the counsel claims for it, to render a decree void, even as to the parties to the suit, unless the notice shall have been filed, its operation must be confined to those cases which come within the very letter of the law.
*480 "We do not think the objection is tenable. It is not pretended that there are any persons, not parties to the suit, who have any claim or lien upon the premises. All the parties to the suit are bound by the decree, and if they are all the parties in interest, we are of opinion that the sale under the decree of'ihe court gives to the purchaser a good title.
His petition must therefore be denied.