WILLIAM D. MOSELEY, TENANT, &c. APPELLANT, *vs.* JOHN DOE, EX DEM. HENRY R. EDWARDS, APELLEE.

The lien of a judgment is not lost by mere delay to sue out execution.

An execution sued out after a year and a day is not void, but voidable only.

The right of the plaintiff to sue out execution after such time can be questioned only by the defendant; it cannot be impeached collaterally.

The lien of a judgment growing out of a matter of record, is constructive notice to all the world.

Real property levied on under a junior judgment and sold, is still subject to the lien of an older judgment; and the circumstance of not proceeding upon the older, until a subsequent lien has been obtained and carried into execution, will not displace the prior lien.

Appeal from Circuit Court of Jefferson County.

The jury found a special verdict, which is recited at length in the opinion pronounced by the court, and which sets forth the facts of the case. Upon this finding, the court below, Judge BALTZELL presiding, held the law to be for the plaintiff, and gave judgment accordingly—from which judgment, defendant appealed.

*S. W. Carmack & James T. Archer, Esquires,* for Appellant.

*L. A. Thompson, Esq.,* for Appellee.

Opinion by Chief Justice DOUGLAS:

This is an action of ejectment, instituted in the Circuit Court of Jefferson County, on the demise of Henry R. Edwards, the appellee, against Richard Roe, Wm. S. Hill tenant in possession, to recover the premises in the declaration mentioned. Wm. D. Moseley, the appellant, was, on motion, admitted the defendant, in the place of the said Roe and Hill, and thereupon he (the said Moseley) confessed the lease, entry and ouster in the declaration mentioned, and put in the usual plea of not guilty—upon which issue was joined, and the cause was submitted to a jury upon the evidence, who returned a special verdict, which, amongst other things, sets forth : That, on the 4th day of November, A. D. 1839, and before that time, one John D. Edwards, of the county of Jefferson, was seized in his demesne as of fee, of and in the messuages, lands and tenements, with the appurtenances, in the declaration mentioned ; that, on the said 4th day of November, A. D. 1839, one William Wilson, by the consideration of the Superior Court of the Middle District of Florida, in and for the County of Jefferson, recovered judgment against said John D. Edwards, for the sum of fourteen hundred and forty-nine dollars and thirty cents for his damages, and the sum of four dollars and forty-eight cents costs—on which judgment a writ of execution was issued in due form of law, on the 8th day of June, 1842—the said judgment not having been revived by *scire facias,* against the said defendant ; that, on the 2d day of November, 1840, one William G. Ponder, by the consideration of the same court, recovered judgment against the said John D. Edwards, for the sum of three thousand two hundred and one dollars and eighteen cents for his damages, and the sum of $4 52-100 for his costs—on which judgment a writ of *fi. fa.* issued in due form of law ; that, on the 23d day of April, 1841, one Harriet T. Wilson, administratrix of Robert H. Wilson, by the con-

sideration of the same court, recovered judgment against the said John D. Edwards, for the sum of thirteen thousand six hundred and thirty-nine dollars, sixty-two cents, for her damages, and the sum of ———— for costs—on which judgment a writ of *fieri facias* issued in due form of law ; that, on the 5th day of November, A. D. 1844, Christopher Hagan and Harriet Hagan, by the consideration of the same court, recovered judgment against the said John D. Edwards, for the sum of fifteen thousand three hundred and forty-three dollars and fifty-seven cents for their damages, and $6 12-100 for their costs—on which judgment a writ of *fieri facias* issued in due form of law ; that, on the last specified judgment, an alias writ of *fieri facias* issued in due form of law on the 21st day of October, 1846, which was levied on divers property of the said John D. Edwards, including the premises in question ; and that, by virtue of said *fieri facias*, the interest of the said John D. Edwards in the lands levied on was sold by the sheriff, on the first Monday (the 7th day) in December, 1846, by consent of parties ; and that, at said sale, William D. Moseley, the defendant, purchased all the interest of the said John D. Edwards, in and to the lands and tenements, &c., including therein the premises in dispute, at and for the price of ten dollars, and received a conveyance therefor in due form of law, executed from Smith Simpkins, Sheriff of Jefferson County ; that, William G. Ponder having, on the 11th day of November, 1846, sued out a *pluries* writ of *fieri facias* on his judgment, did claim and receive the said sum of ten dollars, the price of said land ; that one William Denham having obtained an assignment of the judgment, heretofore specified, of William Wilson, caused an alias writ of *fieri facias* to be issued thereon, on the sixteenth day of February, A. D. 1847, in due form of law, and placed the same in the hands of the said sheriff of Jefferson County—by virtue of which last mentioned writ of *fieri facias*, the said sheriff levied upon the following described property, viz : the west ½ of the southwest ¼, Sec. 27, T. 1, R. 3, N & E.— east ½ of the southeast ¼ of Sec. 29, T. 1, R. 3, N. & E.—the northeast ¼ of the northeast ¼ of Sec. 32, T. 1, R. 3, N. & E.—northwest ¼ of the northwest ¼ of Sec. 30, T. 1, R. 3, N. & E.—southeast ¼ of the southwest ¼ of Sec. 28, T. 1, R. 3, N. & E. October 16th, 1847.

The above lands were advertised according to law, and sold on the 6th day of December, being the first Monday of said month, Henry

R. Edwards bidding twenty-four dollars ; being the highest bidder, they were knocked off to him.   That the said Henry R. Edwards, the plaintiff's lessor, being such highest and best bidder at said sale, and being declared the purchaser of said lands, which are the premises in the declaration mentioned, the said premises were in due form of law conveyed to him by deed, duly executed by James R. Tucker, Esquire, Sheriff of said county.   And we the jury further find, that, on the 10th day of March, A. D. 1848, the said defendant, William D. Moseley, was in possession of the said premises by his tenant, William S. Hill.

And the jury having submitted to the court the question, whether the said plaintiff or the said defendant was in law entitled to judgment upon the facts presented in said special verdict, the court pronounced judgment for the plaintiff, and the defendant appeals to this Court.   The facts were all fully stated in the special verdict, but as there is no controversy about them, it is deemed unnecessary to recite them more fully.

The only errors assigned are, that the court erred in rendering judgment for the plaintiff, and in not rendering judgment for the defendant.   And the only question presented for our consideration is, whether the sale of the lands in question, by virtue of the *fieri facias* issued upon the junior judgment of the Hagans', carries the title against the elder judgment rendered in favor of William Wilson.

The question arises under our act of the Legislature, entitled " An act in relation to liens created by judgments," approved February 12, 1834.   Duval's Comp., 369.   Thompson's Digest, 351, 352 ; the first section of which declares that every judgment at law and decree in equity, which shall be entered and pronounced in any of the courts of this State, shall create a lien, and be binding upon the real estate of the defendant or defendants, *as at common law.*

The second section declares, " That no judgment at law or decree in equity shall create a lien upon the real estate of the defendant situated in any other county than the one in which the same shall have been rendered or pronounced, until the said judgment or decree shall have been recorded in the county in which the real estate, so sought to be bound, may be situated.

The counsel for the appellant contend, that as a judgment created no lien upon the lands of the defendant at common law, the words *as at common law*, at the close of the first section of our statute above

cited, must refer to the lien given by the statute of West, 2, 13 Edward 1st ; and by that statute they insist that the liens depended upon the right of the plaintiff to sue out an *elegit*, citing 1 Call Reps., 125. 4 Hen. & Mumford, 51, and 2 Brock. Rep., 254 ; and so, under our statute, the lien, they argue, depends upon the right of the plaintiff to sue out a *fieri facias* ; that, after the lapse of " a year and a day," the right of the plaintiff to sue out a *fieri facias* was suspended, until the judgment should have been revived by *scire facias*, and the *lien* also was suspended. Consequently, a *fieri facias* issued upon a junior judgment, and levy upon and sale of the land defeated the lien of the elder judgment, and vested the title in the purchaser. This construction, however, we consider too far fetched. From the peculiar phraseology adopted, it is to be sure somewhat difficult to give those words any meaning. The common law was in force by virtue of the act of Nov. 6th, 1829, " For the adoption of the common and statute laws of England," &c., (Duval's Comp., 357, sec. 1. Thompson's Digest, p. 21, No. 2,) when the above cited act was passed. If, therefore, the common law had made judgments a lien upon the lands of the debtor, to have passed an act declaring that judgments should create a lien upon the real estate of the defendant, " as at common law," would have been not only useless but absurd. It is our duty to give those words a sensible construction, if possible ; if we cannot, we must reject them altogether. We do not feel authorized to say, that a statute giving a lien " as at common law," means a lien according to a British statute. By the common law, lands and tenements were not subject to be taken in execution at the suit of a common person, except in case of an heir, who had been sued upon a bond of his ancestor, in which he was expressly named. To remedy this obvious defect, came the statute of West, 2, 13 Edward 1st, Ch. 18, which did not in express terms give a lien upon the lands of the debtor, but provided " That when debt is recovered or acknowledged in the King's Court, or damages awarded, it shall be from thenceforth in the election of him, (the plaintiff,) to have a writ that the sheriff *fieri faciat* of the lands and goods of the debtor, &c., and the one-half of his land, until the debt be levied upon a reasonable price in extent." Peck's Reps., 30. Upon this is founded the writ of *elegit*, by which all the goods of the debtor are delivered at their approved value into the hands of the creditor, and the one-half of his lands are extended. There is nothing in this statute which

indicates the time from which the land shall be bound; but by the construction of the courts, immediately after its enactment and ever since, the judgment has been held to bind the land, and the plaintiff might have execution of the lands which the defendant had at the time of the judgment, although he had aliened them *bona fide* before execution awarded. When the writ was issued and levied, it had relation back to the date of the judgment and cut out all intermediate incumbrances, and remained a lien until the debt was discharged.— Now, when this lien attached, it was subject to all the incidents of any other lien of a similar character—a mortgage for instance—and " the principle is believed to be universal," (said Ch. J. Marshall, in Rankin & Schatzell *vs.* Scott, 12 Wheat., 177,) " that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant." This is not the provision of a statute, but results from the principles of general justice and equity, and is, therefore, one of the incidents of a lien at common law. The position assumed by the counsel for the appellant is, that, as the judgment of Wm. Wilson was rendered in 1839, and had not been revived by *scire facias*, he had lost his right to sue out execution upon it, and consequently his lien was gone, *sub modo*, at least. Our statute, by the natural import of its terms, leaving out the words, " as at common law," makes a judgment at law or decree in equity a lien upon the lands of the debtor, which binds them from its rendition. May it not be that the Legislature anticipated that, even upon this phraseology, the very objection here made might be taken, and, therefore, " *ex abundanti cantela*," added the words, " as at common law," in order to ensure for their statute lien the same incidents as the common law gives to other positive liens, from the date of the judgment or decree. We know not what other or better construction we can give them. The learned author of the Digest has left them out as " useless verbiage," or " superfluous matter," (see note at page 352,) and surely they can well be spared. If, however, that be the proper view of the matter, then those words would seem to favor the proposition, that the lien of a judgment is not lost by mere delay to sue out execution. But the position that it is thus lost, we think is not sustained by the authorities. The argument is, that the lien under the statute of West. 2. 13th Edward 1,

Chap. 18, depends upon the right to sue out an *elegit*—ergo the lien under our statute depends upon the right to sue out a *fieri facias,* and that the holder of the judgment rendered in favor of Wm. Wilson, as above stated, had lost his right by the delay that had occurred in regard to it; but, " *non sequitur,*" he had so lost his right that he could not at any time sue out a *fieri facias.* No one but the defendant in execution could question that right; it cannot be impeached in this collateral manner ; it is not void, and it is voidable only at the instance of the party against whom it issued. Oxley *vs.* Mizle, 2 Murphy, 250. 3 Bacon Abr., New Ed., Title Execution, page 723, letter H, note. McCrea *vs.* Bartlett, 8 John., 361. Jackson ex dem. Roosevelt *vs.* Roosevelt, 13 John., 97, 102. Ridgeley's Executors *vs.* Gartrell, 3 Harr. & Mc Hen., 449, 450. Simmons *vs.* Wood, 6 Yerger, 521. Overton *vs.* Perkins and others, Mart. & Yerger, 367. Day *vs.* Sharp, 4 Wheat., 339. 1 Supp. to U. States Dig., 744, No. 172.

In Virginia, there is no statute which in express terms makes a judgment a lien upon the lands of the debtor ; as in England, the lien is the consequence of a right to take out an *elegit.* During the existence of this right, the lien is universally acknowledged. Different opinions (said Ch. J. Marshall, in the case of the United States *vs.* Morrison et al., 4 Peters' Reps., 136,) seem at different times to have been entertained as to the effect of any suspension of that right. Tucker, Pres., in the case of Watts et al., *vs.* Kearny and wife, 3 Leigh, 293, said, that, however long the judgment may have been out of date, there is no doubt that if it is susceptible of being revived at all, the lien upon the lands yet in the hands of the debtor would be revived *eodem statu.*

The case of Ridge *vs.* Prather, 1 Blackford's (Indiana) Reps., 401 to 405, is this : Prather obtained judgment against Gilwick in 1816, and had execution and *fieri facias* thereon ; the sheriff returned the execution *executed* by a replevin bond the same year.— Gilwick afterwards died. Upon *scire facias* issued in 1823, against the heirs and terretenants of Gilwick & Silly, the replevin surety, the sheriff, *inter alios,* returned Ridge terretenant of land that was Gilwick's, at the time of the judgment. Ridge came in, and pleaded that he was a *bona fide* purchaser from Gilwick without notice, after the expiration of a year and a day from the time of the judgment on the replevin bond, and before the issuing of the *scire facias.*

Upon demurrer to this plea, there was judgment for Prather, the plaintiff, in the Circuit Court, and this judgment was affirmed by the Supreme Court, after a full discussion and a thorough examination of the principles upon which it is founded. The statute of Indiana makes judgments a binding lien upon the lands of the debtor, and is derived from Pennsylvania, (ibid, 402,) whose statute on this subject is similar to our own. Carkhuff vs. Anderson, 3 Binney's Reps., p. 4, was as follows : " In 1799, Hollenbach obtained judgment against Craig ; in 1801, Craig sold and conveyed his land to Anderson ; in 1802, Hollenbach revived his judgment by scire facias, and Carkhuff purchased the premises at sheriff's sale. In ejectment against Anderson, it was held that Hollenbach's judgment was a lien on the land, and Carkhuff recovered." In Green & others vs. Allen, Wash. C. C. Reps., 280, the court held, " That the lien of a judgment which bound real estate was not lost, if, after a testatum fieri facias had been levied and returned, the plaintiff in the writ ordered further proceedings to be stayed." In Campbell, use, &c., vs. Spence, et al., 4 Ala., 552, cited by the counsel for the appellant, the court, after stating the case, say : " From this statement, it appears a levy and sale were made under these executions sufficient for their satisfaction, and in a contest with junior judgment creditors who have acquired a lien on other property, it must be regarded as a satisfaction. To hold otherwise, would be to permit the sheriff virtually to destroy the lien created by the law in favor of the judgment of the plaintiff in error, and to prefer those judgments younger than his, which were capriciously discharged by him out of the money belonging to Marks and the Branch Bank at Mobile. It was their duty to attend to the application of the money obtained by the sale under their executions, and by neglecting to do so, they will be remitted to their claim against the sheriff, and will not be permitted to interfere with the lien of a junior judgment creditor subsequently obtained." It appears, therefore, that this was a contest between rival executions for the proceeds of the sale, and in such a contest, the court said, (page 553,) " if the lien is not lost in some of the modes here pointed out, the date of the respective judgments will determine the priority of right." It is true that, in this case, the court said that a bona fide purchaser under a fieri facias upon a junior judgment, would be protected, citing Den. vs. Hill, 1 Haywood, 72, where the court says : " Were it not so, dormant judgments might be revived a long time af-

terwards, and the innocent vendee evicted, without the possibility of ever regaining the purchase money," and that, in such a case, the lien of the elder judgments would be lost by the laches of the plaintiff.— But as to this it may be remarked, that this was not the question before the Alabama Court; the lien there had been lost by a levy and sale of sufficient property to pay the judgments, and neglect of the parties to see to the application of the money; and, besides, neither of those States have a statute like ours. Their statutes only subject lands to the payment of judgments, and places them as regards this question upon no better ground than an *elegit*. Indeed, in the case of Den. *vs.* Hill, 1 Hay, 81, it is said, "ever since the year 1732, the writ of *fieri facias* has issued in North Carolina against lands and tenements, as well as goods and chattels; the act of George II. declaring that they should be subject to the same proceedings and process and be held in the same manner as personal estate." This writ stands upon the same footing that it did before the 29th, Charles II.; therefore, the property of the debtor is bound from the test of the writ, citing 2 Bac. 352. Salk. 322, and 8 Coke, 71. The case of Scribe *vs.* Deane et al., 1 Brock., 166, was decided in Virginia, where the lien is created by the statute authorizing an *elegit*. Bliss *vs.* Bull, in 9 John. Rep., 132, relates to personal property only, and the court say : "There being no evidence of an actual levy by the sheriff on the goods and chattels of A., the sale to B. was valid, and not barred by the execution." We do not perceive its bearing upon the case under consideration. In the case of Porter's lessee *vs.* Cocke, Peck's R., 30, the lien of the elder judgment was postponed, because an injunction had been obtained, and after its dissolution, the plaintiff agreed with the defendant, in consideration of a partial payment of the judgment, to stay the execution six months. In the meantime, an execution on a junior judgment came to the hands of the sheriff, under which he sold, and the sale was held to be valid. This case is also clearly distinguishable from the one before us.

These are all the cases cited in the brief of the appellant's counsel, and they do not seem to us to sustain the proposition assumed. In Forsyth *vs.* Marbury, decided by Judge Law, and reported by R. M. Charlton, 325, 326, it is said that "the act of 1799 bound all the property of the defendant, from the signing of the first judgment."— "It is not apprehended," said that very able and learned judge, "that the statute of Geo. II., chap. 7, touches the question of lien :

it only enabled the land to be sold *absolutely* as personal property, but the execution had relation back so as to bind from the judgment. It is not an absolute right in the property itself which the creditor obtains by his judgment, either in England or in Georgia ; the legal title is not transferred from the debtor to the creditor. He has, however, a *special interest*, which, although indefinite in extent, may be rendered definite by a levy ; an equitable interest which is perfected by the sale, the sheriff's deed completing the transfer of the property itself, and conveying the legal title. The Master of the Rolls in Brace *vs*. Dutchess of Marlborough, 2 P. Williams 49, says, "a judgment creditor has no right in the land—he has neither a *jus in re*, nor *ad rem ;* all that he has is a lien upon the land." The Supreme Court of the United States in Conrad *vs*. Atlantic Insurance Co., 1 Peters' Reps., 443, say : " it is not understood that a general lien by judgment constitutes *per se* a property or right in the land itself. It only confers a right to levy on the same, to the exclusion of other adverse interests, subsequent to the judgment ; and when the levy is actually made on the same, the title of the creditor for this purpose relates back to the time of the judgment, so as to cut out intermediate incumbrances. Thus, while the creditor acquires no absolute property in the estate of his debtor, he has an interest which is capable of being defined, and which cannot be defeated, save by some act of the party himself, by which it shall be lost or displaced. By pursuing the means pointed out to him by law, he is capable of converting his general lien into a specific title, which, relating back to the date of his judgment, must prevail over all subsequently acquired adverse interests and rights ; and thus this lien affords complete security against subsequent purchasers and incumbrances. Before this is done, the debtor having the legal title, it is true may sell and incumber the property ; but whoever takes it must hold it subject to the lien, which lien growing out of matter of record, is constructive notice to all the world. A purchaser can acquire no other rights than those which were vested in the seller, in whose shoes he stands.— So, if the property be levied on by a junior judgment, it is still subject to the lien of the elder judgment. In the language of Chief Justice Marshall, the circumstance of not proceeding upon the elder judgment, until a subsequent lien has been obtained and carried into execution, will not displace the prior lien. Rankin et al., *vs*. Scott, 12 Wheat., 179. 6 Peters' Cond. Reps., 506. Take (said the Chief

Justice) the common case of mortgages—it has never been supposed that a subsequent mortgagee could, by obtaining and executing a decree for the sale of the mortgage property, obtain precedence over a prior mortgage, in which all the requisites of the law had been observed. If such a decree should be made, without preserving the rights of the prior mortgagee, the property would remain subject to those rights in the hands of the purchaser. The implied lien created by the first judgment retains the preference over a lien created by a second judgment, so long as an *elegit* can issue on the first. A *statutory lien* is as binding as a mortgage, and has the same capacity to hold the land, so long as the statute preserves its force. The cases cited of executions against personal property, we do not think apply. In those cases, the lien is not created by the judgment, or by matter of record.

In Andrews *v.* Doe ex dem. Wilkes, 6 Howard's Mississippi Rep., 554 to 568, Chief Justice Sharkey, delivering the opinion of the Court, said : "The question is whether a prior sale, under a junior judgment, destroys the lien of the elder judgment. It is freely conceded by counsel (says the Chief Justice) that, as a general rule, it does not ; but that this case forms an exception, inasmuch as the liens accrued under different jurisdictions—[one of the judgments having been obtained in a court of that State and the other in the District Court of the United States]. But as the question is fairly before the Court for the first time, it is proper that it should be judicially settled," and, after citing the act of the Legislature of Mississippi of 1824, which declares " That in all cases the property of the defendant shall be bound and liable to any judgment that may be entered up, from the time of entering such judgment, proceeds as follows : " This is emphatically a lien on all property in favor of a plaintiff. A lien is a right given by law to have a debt satisfied out of a particular thing. It may originate by contract or by operation of law and, in either case, the effect is the same—the property being bound and liable to satisfy the judgment, is as much a lien as though it had been created by act of the parties. The judgment is not only a lien, but it is a lien of record, which is notice to every one. The instance of a mortgage lien is a familiar one. There can be no difference in principle between a mortgage and a statutory lien. The one is as binding as the other." And in Ridge *v.* Prather, above cited, it was expressly held that the lien is not limited to a year and a day. Love

v. Harper et al., 4 Humphrey, 116, is to the same effect. In Over-ton v. Perkins, Mar. & Yerg. Rep., 367, it was held that "An execution issued and levied on land more than a year after the rendition of the judgment is voidable, but not void ;" and in Simmons & Whyte v. Wood's lessee, 6 Yerg. Reps., 518 to 522, Catron, Chief Justice, delivered the opinion of the Court. "The first objection," he said, "is that an execution issued more than a year and a day after the judgment was rendered, is void, and a Sheriff's sale by virtue thereof communicates no title to the purchaser. This position cannot be sustained by the rules of the common law. Whyte's judgment was rendered after the sale to Wood and cannot challenge it, because the sale was made after a year and a day"—citing Overton v. Perkins and also 8 John. Rep., 361, and 13 John., 557 and authorties there cited, which, he says, show the true rule. The case cited from 8 John. is Jackson ex dem. McCrea v. Bartlett, in which it was ex-pressly ruled that, in an action of ejectment against a purchaser of land under a sheriff's sale, the regularity of the execution cannot be questioned—page 365, citing Levintz, 403. 3 Caines Cases, 37 and Shirley v. wright, 1 Salk., 273. That from 13 Johns., 97, 102, is Jackson ex dem. Roosevelt v. Delaney and Russell, in which it was held " That the objection that the sale took place long after the return day, and that the execution had not been issued until after a year and a day after judgment, cannot affect the sale." In Butler v. Haynes, 3 New Hamp. 22, it was held by Richardson, Chief Justice, that "where an execution issues after the death of him against whom it runs, it is not a nullity, nor can its validity be called in question collaterally."

In Shotwell v. Murray, 1 John. Chancery Reps., 512, the judgments under which the lands were sold, were both in favor of the same person. The plaintiff had the first sale made under his younger judgment, and then had the same lands levied on, in the hands of the purchaser, and resold under the elder judgment. The chancellor decided that the purchaser under the younger judgment held the land, subject to a re-sale under the elder judgment.

Since the statute of West 2, 13 Edward I., it has been considered that, when a man has judgments for debt, or is conusee of a statute, and the debtor before execution aliens by fine, and five years pass, yet the plaintiff may still have execution. 3 Bacon's Abr., new edition, title Execution, page 725. These authorities, we think,

clearly show that the judgment of the court below upon the special verdict was right.

It has been urged that this case comes within the spirit, if not the letter, of the statute of frauds ; that the failure of the plaintiff in the elder judgment to sue out execution tended to hinder and delay creditors, and was therefore, as to them, a fraud in law.   But we do not perceive the force of the argument.   Junior judgment creditors were not prevented by it from proceeding ; they might, at any time, pursue their remedies against the property of a debtor.   It would have been sold, to be sure, subject to the lien of the elder judgment—so much as it was worth more, it is to be presumed, could have been realized from it.   The plaintiff in the elder judgment had a right, in any event, to be paid out of it, unless he voluntarily relinquished his claim or it was displaced by some act of his or "the party holding it," and the judgment, being a *debt of record*, was notice of that right to all the world. Upon what reasonable ground could junior incumbrances be permitted to disturb it ?   Upon what principle could such a lien be divested in favor of one who knew of its existence ?   He can have no superior right to urge—not even an equity to set up against it.   He purchases with knowledge of the prior lien, and it is supposed that he gives what an encumbered property is worth ; and, in this case especially, there is surely nothing to induce a belief that the purchase was not thus made, as we are shewn by the record that ten dollars was the whole amount paid as the purchase money for several tracts of land.

The judgment of the Court below is, therefore affirmed.

*Per curiam.*