HENRY R. CURRY AND EUGENE TURNER, *Appellants,* v. D. LEHMAN, *Appellee.*

| 55 | 847 |
| f59 | 436 |

1. In construing the provisions oi section 1603 of the Ceneral Statutes of 1906, the provisions of section 1600 and 1601 must be considered, as these three sections are *in pari materia*---they relate to the same subject and must be construed together as though they had originally constituted one enactment.

2. The intention of the legislature in enacting a law is the law itself and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. The court will not follow the letter of the statute when it leads away from the true intent and purposes of the legislature and to conclusions inconsistent with the general purpose of the act.

3. Undoubtedly the general rule of statutory construction is that the intent of the law makers is to be found in the language that has been used, and the courts have no function of legislation, but simply seek to ascertain the will of the legislature. If, however, from a view of the whole law, or from other laws *in pari materia*, the evident intention is different from the literal import of the terms employed to express it in a particular part of the law, that intention should prevail, for that, in fact, is the will of the legislature.

4. The evil to be corrected, the language of the act, including its title, the history of its enactment, and the state of the law already in existence bearing on the subject, are all properly considered by the court in arriving at the legislative intention, because the legislature must have resorted to the same means to arrive at its purpose.

5. It is to be presumed that different acts on the same subject passed at the same session of the legislature are imbued with the same spirit and actuated by the same policy and they should be construed each in the light of the other. The legal presumption is that the legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intent to do so. An interpretation leading to such a result should not be adopted unless it be inevitable. The rule of construction in such cases is that if courts can by any fair, strict or liberal construction find for the two provisions a reasonable field of operation, without destroying their evident intent and meaning, preserving the force of both, and construing them together in harmony with the whole course of legislation, it is their duty to do so.

6. When the meaning of a statute is clear, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by the legislature and not by judicial construction. An interpretation of a statute, however, which must lead to

consequences which are mischievous and absurd is inadmissible if the statute is susceptible of another interpretation by which such consequences can be avoided. For this purpose all parts of a statute are to be read and compared.

7. Where a judgment was recovered in the Circuit Court for Duval County on the 14th day of May, 1897, in a suit wherein W. Lehman was plaintiff and John A. Graham was defendant, and an execution thereon was issued on the 10th day of June, 1897, out of said court, and a certified transcript of said judgment was recorded in the judgment docket of the public records of Manatee County on the 11th day of November, 1902, a lien was thereby created upon the real estate of the defendant situated in Manatee County in favor of the plaintiff; and the lien so established and the notice of the judgment and lien continued in full force although record of the judgment in Duval County was destroyed by fire on the 3rd day of May, 1901 and no legal proceedings to re-establish the same in the last named county was begun until the 15th day of December, 1903, and no final order or decree has been made therein.

8. Where the bill of complaint alleges that the complainants had no actual notice of a judgment, but the bill also shows that a certified transcript of the judgment was recorded in Manatee County before complainants purchased real estate belonging to the judgment debtor in said county, they will be considered purchasers with constructive notice.

This case was decided by Division A.

Appeal from the Circuit Court for Manatee County.

The facts in the case are stated in the opinion of the court.

*Singeltary & Reaves,* for appellants;

*Axtell & Rinehart,* for appellee.

PARKHILL, J.—This is an appeal from an interlocutory order refusing an application for a temporary injunction.

The bill of complaint filed on the 13th day of February, 1908, by Henry R. Curry and Eugene Turner in the circuit court for Manatee county alleges, briefly, that they are the owners in fee simple of certain described lands in the city of Bradentown, purchased from one, John a Graham, by a warranty deed dated the 9th day of May, 1907; that the defendant D. Lehman claims an adverse estate or interest in said property as a judgment creditor of said Graham; that the sheriff of Manatee county, by the direction and instructions of the said defendant, has levied upon said property and is now advertising the same to be sold on the first Monday in March, 1908, under and by virtue of an execution issued out of the circuit court of Duval county, Florida, dated the 10th day of June, 1897; that the judgment upon which said execution was issued was recovered in the circuit court for Duval county on the 14th day of May, 1897, in a suit wherein D. Lehman was plaintiff and John A. Graham was defendant; that a certified transcript of said judgment was recorded in the judgment docket on page 238 of the public records of Manatee county on the 11th day of November, 1902; that the records of Duval county and of the circuit court thereof showing the rendition and entry of said judgment were entirely destroyed by fire on the 3rd day of May, 1901, and no legal proceeding to re-establish the same was begun until the 15th day of December, 1903; that said proceeding to re-establish said judgment is still pending and no final order or decree has been made therein; that at the time the said complainants purchased said property they had no notice, information or knowledge of the existence of said judgment nor that said Lehman had any interest in or lien upon said property; that the said judgment is void and the record thereof constitutes a cloud upon complainants' title to said property. The bill prays for a restraining order, enjoining and restraining the

said Lehman, his agents and attorneys from selling the said property under said execution for the purpose of satisfying said judgment and that the record of said judgment be cancelled as a cloud upon the title of said property. The bill was sworn to.

The defendant filed an affidavit, by his counsel, showing his recovery of the judgment against Graham for the sum of $8,433.65 and costs in the Duval county circuit court on the 14th day of May, 1897; that judgment was duly entered and recorded in the minutes of said court; that on the 24th day of June, 1897, affiant caused to be made a certified transcript or copy of said judgment by the clerk of said court under the seal of said court; that on the 10th day of November, 1902, the said copy or transcript of said judgment, certified as aforesaid, was filed in the office of the clerk of the circuit court for Manatee county in Judgment Docket at page 238, one of the public records of said county in the book in which are recorded all transcripts of foreign judgments filed with the clerk of said county; that said judgment, nor any part thereof, has been paid: that on or about the 29th day of January, 1904, the said Graham instituted a suit in the circuit court of the United States for the southern district of Florida, to restrain the enforcement of said judgment and that a temporary injunction issued by said court remained in force until the 3rd day of January, 1908, when it was dissolved and said bill dismissed. To the said affidavit was attached a copy of said certified transcript of the judgment and a certificate of the clerk of Manatee county showing that it was recorded in said county as stated, and a certificate of the clerk of the circuit court for Jefferson county showing that said transcript of the said judgment was recorded in the book of Foreign Judgments of that county on the 25th day of June, 1897.

The court denied the application for the temporary injunction, and the complainants appealed.

To decide the questions presented here, we must construe the provisions of chapter 4919, Acts of 1901, which was brought forward as section 1603 of the General Statutes of 1906. In this connection we must consider the provisions of the act of February 12, 1834, which was brought forward as sections 1601 and 1602 of the General Statutes of 1906. These sections relate to the lien of judgments, and are as follows:

"Section 1600. (1173). In counties where rendered. Every judgment at law (and decree in equity) which shall be entered in any of the circuit courts of this state shall create a lien and be binding upon the real estate of the defendant in the county where rendered."

·Section 1601. (1174) In other counties. Such judgments and decrees shall create a lien upon the real estate of the defendant situated in any other county than the one in which the same shall have been rendered, when a certified transcript of the said judgment or decree shall have been recorded in the county in which the real estate so sought to be bound may be situated."

Section 1603. How lien lost when record is burned. Whenever the records of any court in any county in this state showing the entry or rendition of any judgment or decree have been heretofore destroyed by fire, such judgment or decree, or any execution issued thereon, shall not be good and effectual as a lien on real estate as against creditors or subsequent purchasers for a valuable consideration and without notice, unless legal proceedings to re-establish the same shall be begun in the proper court within nine months from the passage of this act."

The title of chapter 4919, Acts of 1901, is as follows: "An Act Requiring Proceedings for Re-establishment of Judgments and Decrees under Certain Circumstances to be Begun in a Certain Time, to be Notice to and Liens

Against Bona Fide Creditors or Subsequent Purchasers."
The act was approved May 30, 1901, and did not ex-
pressly repeal any other statute.

There are but two assignments of error, both of which
raise the same question : That the court erred in denying
the complainants' application for a temporary injunction.
The complainants base their claim for relief in this cause
entirely upon the provisions of chapter 4919 of the Laws
of Florida, approved May 30, 1901, being section 1603 of
the General Statutes of 1906.

It is contended by appellants that the execution in
question could not be levied upon land in Duval county
and a sale made thereunder as against creditors or sub-
sequent purchasers for a valuable  consideration,  and
without notice, because proceedings to re-establish the
same were not begun within the time provided by the
act, and that a transcript of the judgment recovered in
Duval county could not be recorded in Manatee county
so as to create a lien on lands in that county at a time
when the judgment entry itself in the county were re-
covered was no longer in existence and under the stat-
utes such judgment had ceased to be good and effectual
as a lien on real estate; and that, under the terms of the
act referred to, the execution, as well as the judgment, is
not good and effectual as a lien on real estate as against
subsequent purchasers for a valuable consideration, with-
out notice, unless the proper proceedings are commenced
within nine months to re-establish the judgment.

In construing the provisions of section 1603 of the
General Statutes we must not shut our eyes to the pro-
visions of section 1600 or 1601, especially the latter sec-
tion.   Our survey must extend to them.   These three
sections are   *in pari materia*—they relate to the same
subject—and must be construed together as though they
had originally constituted one enactment.   We agree
with counsel for appellants that it is the duty of the court

to interpret laws and not to make them, and we are to make no subtraction or addition to the meaning of a statute. The intention of the legislature, however, in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. The court will not follow the letter of a statute when it leads away from the true intent and purposes of the legislature and to conclusions inconsistent with the general purpose of the act.

"Intent is the spirit which gives life to a legislative enactment." The intent is the vital part, the essence of the law, and the primary rule of construction is to ascertain and give effect to that intent. Undoubtedly the general rule of statutory construction is that the intent of the law-makers is to be found in the language that has been used, and the court have no function of legislation, but simply seek to ascertain the will of the legislature. If, however, from a view of the whole law, or from other laws *in pari materia,* the evident intention is different from the literal import of the terms employed to express it in a particular part of the law, that intention should prevail, for that, in fact, is the will of the legislature. The evil to be corrected, the language of the act, including its title, the history of its enactment, and the state of the law already in existence bearing on the subject, are all properly considered by the court in arriving at the legislative intention, because the legislature must have resorted to the same means to arrive at its purpose.

As we have seen, sections 1600 and 1601 were enacted originally in 1834 and section 1603 in 1901, and the three sections were brought forward at the same time into the General Statutes of 1906. In the comparison of different statutes passed at the same session this circumstance has weight, as indicating the prevalence of the same legislative purpose, as rendering it unlikely that any marked contrariety was intended. It is to be pre-

sumed that different acts on the same subject passed at the same session of the legislature are imbued by the same spirit and actuated by the same policy and they should be construed each in the light of the other. The legal presumption is that the legislature did not intend to keep really contradictory enactments in the statute books, or to effect so important a measure as the repeal of a law without expressing an intention to do so. An interpretation leading to such a result should not be adopted unless it be inevitable. The rule of construction in such cases is that if courts can by any fair, strict or liberal construction find for the two provisions a reasonable field of operation, without destroying their evident intent and meaning, preserving the force of both, and construing them together in harmony with the whole course of legislation upon the subject, it is their duty to do so.

When the meaning of a statute is clear, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by the legislature and not by judicial construction. An interpretation of a statute, however, which must lead to consequences which are mischievous and absurd is inadmissible if the statute is susceptible of another interpretation by which such consequences can be avoided. For this purpose all parts of a statute are to be read and compared. Knight & Wall Co. v. Tampa Sand Lime Brick Co., decided at this term.

Approaching the duty we have in hand with caution and with a proper appreciation of the distribution of the powers of the government, let us turn to the statutes involved in this controversy, and, holding aloft the torch of reason, let us read them in the undimned light of these principles of the law.

At common law a judgment was not a lien on real estate. The matter of creating and controlling the lien of judgments is entirely the creature of statute and the extent and operation of the same are fixed by statute.

17 Am. & Eng. Ency. Law (2nd ed.) 770; Morsell v. First Nat. Bank, 91 U. S. 357. It is by reason, then, of the provisions of section 1600 that a judgment is a lien upon real estate *in the county where entered or rendered,* and it is likewise true that it is solely by reason of the provisions of section 1601 that a judgment entered or rendered in one county creates a lien upon the real estate of the defendant situated in any other county, when a certified transcript of the said judgment *shall have been recorded* in the county in which the real estate so sought to be bound may be situated. By the very words of the statute the lien created *by the entry or rendition* of the judgment in the Duval county circuit court was *limited* to the real estate of the defendant *in that county.* By the very words of the statute the judgment entered or rendered in Duval county created a lien upon the real estate of the defendant, Graham, in Manatee county *only when a certified transcript* of the said judgment *was recorded* in Manatee county. It was the recording in Manatee county, of a transcript of the judgment entered or rendered in Duval county that binds the lands of the judgment debtor in Manatee county. 23 Cyc. 1354.

It may be conceded that the statutory provision authorizing transcripts of a judgment rendered in one county to be recorded in another does not create a *new* lien, Bradfield v. Newby, 130 Ind. 59, 28 N. E. Rep. 619, and that the transcript so recorded does not become a judgment of the court of the county to which the transfer is made; but the transcript thus entered in another county becomes a quasi-judgment for certain limited purposes, such as a lien, so as to enable the case to be proceeded in with like effect as to lien as if the judgment had been originally entered in the court of the county to which the transfer has been made. Mellon v. Guthrie, 51 Pa. St. 116; 23 Cyc. 1354. While the filing of the transcript may create no *new* lien, it certainly conveys

the lien of the original judgment to. the lands of the defendant in the county where the transcript is recorded. Unless the transcript of the judgment is so recorded in the other county, the lien of the judgment rests only on the lands of the defendant within the county where the judgment was rendered.  23 Cyc. 1354.  The lien of the judgment exists in the other county only by reason of the recording of the transcript there.  There would be no lien in the other county but for the recording of the transcript there.  If, then, the lien of the judgment is thus transferred to the other county, it may be said that the recording of the transcript of the judgment in another county causes or creates the lien in the other county.  It gives notice also of the lien.  The statute clearly recognizes two agencies in the creation of a judgment lien, the one being the entry or rendition of the judgment in one county, the other being the recording of the transcript of that judgment in another county.  These two agencies whereby a judgment lien may be created were in contemplation of the legislature when section 1603 was enacted. When the record of the judgment entered or rendered in Duval county, was destroyed by fire the judgment continued in full force.  A judgment is the sentence of the law pronounced by the court.  The entry or record is not the judgment, but merely the best evidence that the judgment exists.  1 Freeman on Executions, § 18. When the evidence of the judgment rendered in Duval county was destroyed by fire, therefore, it became highly necessary to require that legal proceedings to re-establish the judgment must be begun within the proper court, or that such judgment shall not be good and effectual as a lien on real estate as against creditors or subsequent purchasers for a valuable consideration *and without notice.*  There was no necessity for the re-establishment of the evidence of the judgment in order to give notice of the judgment and the lien on the lands in the other

county where the transcript of the judgment might be recorded. The recording of the transcript in the other county would give notice of the lien in that county even though the destruction by fire of the evidence of the judgment destroyed the notice of the lien in the county where the judgment was originally rendered.

The title of the act from which section 1603 is taken shows that the proceedings for re-establishment of judgments when destroyed by fire were required to be begun in a certain time "to be *notice* to and liens against *bona fide* creditors or subsequent purchasers." The necessity for this legislation existed only by reason of the destruction of the records showing the entry or rendition of the judgment, which afforded notice to *bona fide* creditors or subsequent purchasers. There was no necessity for this legislation where there was no destruction of the records showing the recordation of the transcript of the judgment, which furnished notice of the lien in the county where the transcript was recorded. The evil to be corrected, then, was a total failure of notice of the lien by reason of the destruction of the record showing the entry or rendition of the judgment. This was what the legislature had in mind by the enactment of section 1603. There was clearly no intention of the legislature to touch the provisions of section 1601, relating to the recording of transcripts of judgments and the effect thereof, but only to affect the provisions of section 1600 to the extent of providing that the judgment which created a lien upon the real estate of the defendant in the county where rendered should not be good and effectual as a lien on real estate as against creditors or subsequent purchasers for a valuable consideration and without notice, unless legal proceedings to re-establish the same should be begun in the proper court within a certain time. It was the intention of the legislature, by the enactment of section 1603, to destroy the lien created by section 1600, as

against creditors or subsequent purchasers for a valuable consideration and without notice, except upon the performance of the acts required by the provisions of section 1603. The provisions of section 1603 do not refer in terms to the lien created or effected by the recording of the transcript of the judgment. If it had been the intention of the legislature to have affected the lien caused by the recording of the transcript of the judgment, section 1603 might have provided that whenever the records of any court in any county in this state showing the entry or rendition of any judgment or decree, *or showing the recordation of a certified transcript of any judgment or decree,* have been heretofore destroyed by fire, such judgment or decree, *or the recorded transcript thereof,* shall not be good and effectual as a lien, etc. The legislature, however, in the enactment of section 1603, omitted all direct reference to the lien effected by the recordation of the certified transcript, the said section simply providing: "Whenever the records of any county in this state showing the entry or rendition of any judgment or decree have been heretofore destroyed by fire, *such judgment or decree* * * * shall not be good and effectual," etc. The words "such judgment or decree" clearly refer to the judgment or decree entered or rendered in the court of the county where the record was destroyed by fire and the lien created by such judgment or decree was limited to the real estate of the defendant in the county where rendered, as the legislature must have known from the provisions of section 1601, and it must have been the intention of the legislators, by the enactment of section 1603, to limit the effect of its provisions to the county where the judgment or decree was rendered.

The record shows that a transcript of the judgment recovered in Duval county was recorded in Jefferson county as well as in Manatee county, and that the transcript of the judgment was recorded in Jefferson county

prior to the destruction of the record of the judgment by fire in 1901.

We think it clear that when this judgment was entered or rendered in Duval county on the 14th day of May, 1897, it became a lien binding upon the real estate of Graham in Duval county; and when a certified transcript of the said judgment was recorded in Jefferson county on the 25th day of June, 1897, before the destruction of the record of the original judgment by fire in 1901, a lien was created upon the real estate of the defendant situated in Jefferson county. Can it be fairly contended, then, that, when the records of the circuit court in Duval county were destroyed by fire, the lien that had been theretofore created in Jefferson county was destroyed also? The statute says that whenever the records of any court in any county in this state showing the entry or rendition of any judgment or decree have been heretofore destroyed by fire, such judgment or decree, that is the judgment or decree so rendered, shall not be good and effectual as a lien on real estate as against creditors or subsequent purchasers for a valuable consideration, and without notice, etc. Clearly the judgment referred to here is the judgment rendered in the county whose records were destroyed by fire, and this judgment of itself created a lien only in the county where recorded. A necessity existed for the provisions of this statute in the county whose records were destroyed by fire, for the notice furnished by the entry and rendition of the judgment in that county no longer existed. But now about the lien that had been transferred to the county of Jefferson by the recording of the certified transcript of the judgment there? Do the provisions of section 1603 affect the lien existing in Jefferson county prior to the destruction by fire of the judgment in Duval county? The destruction by fire of the record of the judgment in Duval county did not destroy the evidence of the lien in Jeffer-

son county, the notice afforded by the transcript recorded
in that county still existed.   There was no necessity, then,
growing out of the want of notice in Jefferson
county, for the enactment of section 1603.   The evil
to be corrected in Duval county by the enactment of sec-
tion 1603, did not exist in Jefferson county.   Consider-
ing the evil to be corrected as well as the state of the
law already in existence bearing on the subject when
chapter 4919, Acts of 1901, was enacted, we think it
clear that the intention of the legislature was to make
chapter 4919 or section 1603 affect such liens as are
created solely by the original entry or rendition of a
judgment, the record of which has been destroyed, and
not the lien or judgments which has been effected or
created by the recording of a certified transcript of the
judgment in counties other than the one in which the
judgment was rendered.   To hold that the destruction
of the record of the original judgment by fire in Duval
county destroyed the lien effected by the recording of the
transcript in Jefferson county would lead to mischievous
consequences not necessary to a fair and reasonable in-
terpretation of the words of the statute.

What we have said about the effect of section 1603 in
reference to the lien created by the recording of the
transcript of the judgment in Jefferson county before the
fire of 1901 will apply with equal force to the lien created
by the recording of the transcript of the judgmnet in
Manatee county after the destruction of the record of the
judgment in Duval county in 1901.

Considering, therefore, the language of the act, in-
cluding its title, the evil to be corrected, the state of the
law already in existence bearing on the subject, we think
it was the intention of the legislature to confine the pro-
visions of section 1603 to the county in which the record
of the judgment was destroyed by fire, and such we think
is the effect of that section.

The bill of complaint shows that the complainants were not subsequent purchasers without notice. The bill alleges that they had no actual notice of the judgment, but the bill also shows that a certified transcript of said judgment was recorded in Manatee county long before they purchased the property, and they were, therefore, purchasers with constructive notice. If the complainants had either actual or constructive notice of the equitable rights of the defendant in conflict with the title that their deed purported to convey, they would not be a *bona fide* purchaser—that is a purchaser for value and without notice. 23 Am. & Eng. Ency. Law (2nd ed.) 476. The judgment of the defendant, being a debt of record, was notice of that right to all the world. Moseley v. Doe *ex. dem.* Edwards, 2 Fla. 429, text 441.

The court very properly denied the application for a temporary injunction. The order is affirmed.

TAYLOR and HOCKER, JJ., concur;

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., concur in the opinion.